Case number 24-7063. Michaela Smith, Appellants v. Howard University. Ms. Dodson, appointing amicus curiae. Mr. Priebus for the appellate. Good morning. Ms. Dodson, please proceed when you're ready. Good morning, Your Honors. Eva Schall with the Georgetown Appellate Litigation Clinic. With the court's permission, Allie Dodson will be presenting arguments on behalf of amicus. Thank you. Ms. Dodson. Good morning, and may it please the court. Ms. Smith enrolled at Howard with the goal of practicing medicine in her underserved community of Shreveport, Louisiana. Instead, she was expelled following a one-sided disciplinary proceeding while her male peers received leniency for similar conduct. The district court's decision should be reversed for two reasons. First, the circumstances indicate that Ms. Smith was punished more severely because of her sex. And second, Howard breached the terms and spirit of its educational contract with Ms. Smith. Turning first to Title IX, discriminatory intent is an inherently factual dispute, and a reasonable jury could find that Howard discriminated against Ms. Smith because she is a woman. Ms. Smith has provided sufficient evidence to conclude that Howard's asserted excuse for her expulsion is actually pretextual. First, she has shown that men got lighter punishment for comparable acts. Life-altering sanctions for women but leeway for men is especially indicative of gender discrimination. At least two of the men in this case were accused of an identical offense to Ms. Smith but received only a permanent notation in their records. And the third man engaged in even more serious conduct. He photographed an entire quiz, and these pictures were later circulated to other students. He was suspended for 30 days and had to give a presentation on professionalism. Meanwhile, Ms. Smith was expelled. And Howard claims that Ms. Smith was punished more harshly because she was unremorseful. But Ms. Smith admitted to altering her answer, and even though she explains that it wasn't her intention to cheat, she still apologized for the problem, for her mistake, and for her error. The issue isn't that the record contains no expressions of remorse. What Howard is really saying is that Ms. Smith didn't apologize in the right way. This is an inherently subjective standard, and these sorts of subjective standards are ripe for abuse by nefarious decision makers in order to conceal their discrimination. We're talking about an honor code. And so when you're looking at the comparators here with respect to the men, we're talking about cheating. And so admittedly, before she turned in her challenge, she actually changed her answer on the actual test and then turned in the challenge. So ultimately, Howard is expelling her because she actually cheated on the form. The second thing in terms of the honor code violation, it appears that with respect to the other comparators, when we go back to your suggestion of the remorse, it looks like there's an opportunity for the university to rehabilitate any of the persons who are involved in honor code violations by giving them an opportunity to acknowledge their conduct by admitting that they actually cheated and then essentially doing something about it. And so that's why they're looking at remorse. Do you acknowledge what you've done and are you remorseful about it so that it doesn't happen again, i.e. you could think about ramifications later if you're a physician and then you're later sued for medical malpractice, for example. Are you going to change your charting for a patient just to get yourself out from under a particular issue? So explain that part to me about you're saying that you don't think that she apologized in the way that they would have her, but that remorse that they're looking at seems to go to the honor in honor code violation. Well, the facts in the record don't indicate that the men did apologize in a way that was qualitatively greater than what Ms. Smith did. For example, if you look to the... But they said they cheated. They admitted to cheating and she does not. She says, I didn't intend to. Not necessarily your honor. In the honor code minutes of the student who screenshotted the examination, for example, it says that he admitted to the violation. It doesn't say that he had said that he intended to violate the honor code, just that he had admitted to the violation. In fact, in his previous conversations with Dr. Ford, he had told her that even though he had screenshotted the examination, he hadn't shared it beyond personal use, even though it was later found circulating among other students. It's a jury question really as to whether the remorse that Ms. Smith expressed was comparable to the remorse expressed by her male peers. And this is only one of the ways in which Ms. Smith was discriminated against by Howard. Can I just ask you on the apology question? Because the way you framed it was that she didn't apologize in the right way. Everybody apologized, but she didn't apologize in the right way. And it seems to me that what the school thought was not that she didn't apologize in the right way, it's that she didn't apologize for the right thing. And those seem to me somewhat different. So if somebody says, I'm really sorry that you misunderstood. And then the other person says, I'm really sorry that I cheated. Those are both apologies. And you could say that one of them is apologizing in a different way from the other one, but then they're apologizing for different things. And if that's true, then would that undercut your submission that there was differential treatment of like-situated individuals? Because they wouldn't be like-situated individuals. No, Your Honor. Because of the subjectivity of that remorsefulness analysis, it really does go to a jury. And it's ordinarily a question for the jury to address as to whether comparators are similarly situated. To the extent there's different inferences that could be drawn from the apologies on the record or the apologies that Howard purports happened, that would be a matter for the jury to address. As a matter of law, we cannot say that Ms. Smith was less genuinely remorseful than her male counterparts. I mean, it can't be that every time there's a comparator that's put forward, it necessarily goes to the jury on whether the comparator is similarly situated. There have to be situations in which the court can decide that as a matter of summary judgment, the comparators are not similarly situated. Yes, and that does happen, Your Honor, in situations, for example, where the comparators had a different supervisor or they had different jobs in the Title VII context. But those are very objective determinations here. What we have is a subjective dispute of material fact as to the degree of Ms. Smith's remorsefulness. And this sort of subjective inquiry is best addressed by a jury, especially when it's bolstered by evidence of the deficient process and other shortcomings Ms. Smith received. An accumulation of procedural irregularities, all disfavoring a student of one sex, begins to look like a biased proceeding. And in this case, Ms. Smith experienced several of the defects that courts have found to be indicative of bias. The Honor Council conducted no investigation prior to bringing these allegations against her. Dr. Gilland was not present at her hearing and did not submit a written complaint, even though the lab coordinators of male students did so. And her appeal was not processed in a timely manner. Based on this information, as well as the much harsher sanctions she received relative to her male peers, a jury could find that this was gender discrimination. Thank you. I have one question for you, actually, before you sit down. And we will give you a little time for rebuttal. So this is on the contract piece of it. There's a back and forth about whether the policy gave rise to contractual rights. And was that kind of claim, I know there was generally a contract claim discussed in the district court, but was the particular idea that the policy itself gave rise to binding contract rights something that was litigated in the district court? And we just believe so, your honor. There was discussion of the general contractual relationship between a student and their university. And that is colored by what is in the honor code in this case. Which sounds like the implied contract claim, which that I think was before the district court. But on the idea that the policy itself gave rise to express contract rights, I didn't see where that was specifically pressed and litigated in the district court. Well, the attorneys at the district court pointed to certain breaches of the honor code, such as not having a properly appointed student member present, that those are honor code procedures, your honor. And therefore, what they were alleging with the breach was a violation of the honor code, which became part of the implied contract. And we, as a DC circuit, have not expressly ruled on Title IX in terms of any particular burden shifting. But you relate that McDonnell Douglas is appropriate here. Apparently, both you and defense have agreed on that. Why do you believe that that's the best framework here? And then also, a sub part of that question is that it seems like we don't have all of the elements presented here in terms of the burden shifting. Amicus believes that the McDonnell Douglas test is the most appropriate framework because of the similarity of Title IX cases in many ways to Title VII cases. Additionally, part of why McDonnell Douglas was created was because it's very difficult to find direct evidence of discrimination in many cases. This test was created in order to give plaintiffs with circumstantial evidence a means to get these sorts of discrimination claims redressed, your honor. So it would be appropriate here. Okay. And then what about you establishing essentially the prima facie case? Do we skip that, allow the employer to go to essentially the legitimate non-discriminatory reason and then allow you to go to pretext because we're here on summary judgment? In our circumstance, I believe that the prima facie case was at issue before the district court and Howard has proffered what it claims to be its non-discriminatory excuse for Ms. Smith. So now we are in the third step of McDonnell Douglas in which we're really just trying to get at the underlying question of Title IX. Could a reasonable jury find there gender discrimination? Thank you. May it please the court and good morning. The evidence in this case was overwhelming that Ms. Smith tried to cheat on the exam. And the challenge sheet itself was particularly damning. And just to review it quickly, she altered letters and squeezed in letters in a surreptitious way. That's not what you do if you're just trying to seek edification. She put on the challenge sheet that her answer to question 14 was posterior semicircular canal. That was false. That was not her answer. She wrote on the challenge sheet, my answer was correct yet marked wrong. That was false. She wrote recalculation needed, obviously asking for a great increase. So in this case, it was overwhelming evidence that she cheated. And certainly, it was not irrational for the university to determine that she cheated. But I don't think that's what's being argued. I think the other side acknowledges that there was cheating. And then the question is, was the response to the cheating on par with the response to the cheating by others? Actually, they do not concede that she cheated. And Ms. Smith was very clear, it's on the record, that she did not cheat. And we quoted some of her deposition testimony on that in our brief. If you look at the minutes of the hearing council, it's recorded there that she did not cheat. In the lower court, she did not admit cheating. At her deposition, she did not admit cheating. In this court, in our opening brief and reply brief, she did not admit cheating. Yeah, maybe the cheating, that's a conclusion as opposed to... Right. Now, what she says is that she apologized for her error and not being clearer. But as was pointed out in some of the questioning, she's apologizing for the wrong thing. It's like saying, I apologize that you got upset about that. That's not an apology for your conduct, it's an apology, it's sort of an excuse for what you did. And all of her so-called apologies are actually trying to justify her cheating. She's not offering apologies for cheating, she's offering excuses for cheating. And that's what was obvious to the hearing panel. I think it's obvious to anyone who looks at the documents. She had already passed the exam, so what does she gain from all of this? What she gains from it is that she, and this is spelled out in our brief as well, she was on a failing trajectory for that course. She failed the second exam and the second trajectory. She knew that if she failed the course, she'd be out because she was a repeating student. So because of that, she had an incentive to try to get a higher grade on this class, every point counted for her. And that was her incentive. And regardless of whether she had an incentive or not, she tried to cheat. I mean, that's the bottom line. We've heard about the comparators, and I think the dialogue so far is right on the money that the comparators all admitted cheating. There's some suggestion that one of them, I think it's AC2, been referred to that way, that AC2 admitted the violation. Well, that's what's in the minutes of the Honor Council Committee. What violation was he admitting other than an Honor Code violation, which is the reason why they were all there? And there was no evidence presented in the record below that AC2 was not admitting to a violation of the Honor Code. I mean, it seems obvious that he was. And furthermore, the testimony of the dean and Dr. Callender, who is the HCC chair, all established that they understood him to have admitted the violation. So against all of that, the appellant has nothing in terms of evidence. If she had admitted to the right thing, just to use the formulation that's been bandied about, but was expelled, then would you acknowledge that at that point the differential treatment would go to the jury? Well, if she admitted to cheating, then there are these comparators. And I can't think of any reason here why that wouldn't go to the jury, but that's not the fact. It's not what was argued. It's not what the lower court found, and there's no evidence to support it. So that's my argument on that. There was a suggestion also that Dr. Gilland was not present. Well, Dr. Gilland was not the accuser as far as Howard University was concerned. He's not the one that advanced the finding to the upper levels of the medical school. And Ms. Smith was sent a letter from Dr. Wilson indicating that he was the accuser. So Dr. Wilson was present at the hearing. Now, Dr. Gilland was not present, but she had never asked him to be present. She had never asked the Honor Council to have him present. And when pressed to explain what Dr. Gilland could add, what information he could add, she came up with nothing. I mean, she said that Dr. Gilland told her that she could fill out the challenge form in the format that she saw fit. Well, it turned out she did use the standard format. And there's nothing about that verbal exchange that is exculpatory in any fashion whatsoever. She didn't present any evidence in the lower court that Dr. Gilland had something spectacular to say or anything exculpatory. And that way, she didn't depose Dr. Gilland. She made no record that Dr. Gilland had any evidence. And when she went to the dean, she didn't explain that Dr. Gilland had anything exculpatory to say. She complained to the provost, didn't explain that. So this whole business about Dr. Gilland is a red herring. I just want to ask you about her being a repeating student. How much of an influence was that on the decision? And were any of the other competitors repeating students? I don't believe any of the other students were repeating students. I don't believe that was the case. She was not expelled because she was a repeating student. She could have been dismissed for that reason, but that's not the way it happened. There's reference to this Promotions and Graduations Committee, which is an academic standards committee. It can dismiss a student if they are a repeating student and failed. But that was irrelevant to the decision here. As the appellant admitted at her deposition, this P&G committee had absolutely nothing to do with the decision. It has nothing to do with disciplinary decisions. The decision was made by the dean, if you look at his letter, based on the Honor Council's conclusions and findings. And in reference to the breach of contract, in the policies and procedure manual, I believe she kind of points out to process a lot and your process for investigating honor code violations, there are time parameters, there's the sharing of data collected, there's notice of the charges, there's timing of the decisions and appeal options. So she's referring to a lot of the things in the process that she believes did not happen. How would you reference those things with respect to the breach of contract? Well, the trial court went through all those issues and found no problem. And I see no problem. We've laid that out on our brief. On appeal, she tries to raise factual issues that were not raised in the court below. We had no opportunity to respond to them and the judge had no opportunity to address them. So it seems inappropriate to us for those to even be considered here on appeal. But on all these procedural issues, I think the appellant can't see the forest through the trees. All of the male students were found to have violated the honor code. So there was no instance here where there was some procedural bias that favored the male comparators. All of them were found guilty. So this is not a case where there's some different outcome that results from procedural differences. And the differences are very minor. And they don't really affect the ultimate decision. They weren't material. The ultimate decision was obvious that she had cheated. The only difference between her and the male students was remorse. And that's not a procedural issue. It's not a procedural issue that she was found not to have engaged in remorse. That's a substantive issue that goes to the sanction. I see I'm out of time, but if there are any further questions, I'd be happy to address them. Thank you, counsel. Dawson will give you two minutes for rebuttal. Two points on rebuttal, Your Honor. Ms. Smith did also admit to violating the honor code in the way that Howard asserts the male students did. She never denied changing her answer sheet. She always admitted to that, first to Dr. Ford and then to the Honor Council. In fact, in Provost Butto's letter to her, he stated that her words at the Honor Council were an admitted violation of the honor code. But the very fact that we're up here arguing about whether her apology was sufficient or whether it was insufficient shows why this dispute is really a jury question. Reasonable minds could differ as to whether she apologized sufficiently or why she the way that she did. Therefore, this is a question best addressed by a jury. Secondly, with regards to the breach of contract claim, Amicus would like to clarify that we are not raising an express contract claim today, but rather looking at the duties that Howard owed to her under this general educational contract. Right. I guess I don't know that I meant to saying is that the policy itself gave rise to contractual requirements. Yes, Your Honor. And as far as Howard characterizes these procedural differences as minor or unimportant, that is, again, a matter for the jury to determine. The extent to which Ms. Smith was harmed by these procedural breaches is a classic question of fact. Whether Dr. Gillens would have provided exculpatory evidence or not even necessarily that, if his presence could have helped her in some way, if a properly constituted student body could have perhaps come to a different decision. Those are all questions that are best addressed by the jury rather than as a matter of law. Thank you. Thank you, Ms. Dawson. Thank you, Mr. Pryor. We'll take this case under submission. Ms. Dawson, you and the appellate litigation program were appointed by the court to present arguments assisting the appellant in this matter, and the court thanks you for your able assistance.
judges: Srinivasan; Henderson; Childs